J-S25032-20

2020 PA Super 206

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | : | |
| v. | : | |
| LEWIS A. MANZANO | : | |
| Appellant | : | No. 895 MDA 2019 |

Appeal from the Judgment of Sentence Entered April 26, 2019
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0000904-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | : | |
| v. | : | |
| LEWIS A. MANZANO | : | |
| Appellant | : | No. 901 MDA 2019 |

Appeal from the Judgment of Sentence Entered April 26, 2019
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0000776-2018

BEFORE: LAZARUS, J., DUBOW, J., and KING, J.

OPINION BY KING, J.:                                    **FILED AUGUST 21, 2020**

Appellant, Lewis A. Manzano, appeals from the judgments of sentence entered in the Cumberland County Court of Common Pleas, following his *nolo contendere* pleas to one count each of rape of a child and aggravated indecent assault of a child, and three counts of indecent assault of a child.[1] We affirm.

---

[1] 18 Pa.C.S.A. §§ 3121(c); 3125(b); and 3126(a)(7), respectively.

The relevant facts and procedural history of this case are as follows. On January 18, 2019, Appellant entered a negotiated plea of *nolo contendere* at docket No. CP-21-CR-0000776-2018, to one count of rape of a child, and at docket No. CP-21-CR-0000904-2018, to one count of aggravated indecent assault of a child and three counts of indecent assault of a child. Appellant's convictions stem from sexual offenses he committed between December 22, 2017 and February 21, 2018. Pursuant to the terms of the plea bargain, the parties agreed on a minimum sentence between 11 and 15 years' imprisonment (with the maximum to be decided by the court), that Appellant would be subject to the registration requirements under Revised Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA II")[2] and register as a Tier III offender, and Appellant would undergo an evaluation by

---

[2] Following **Commonwealth v. Muniz**, 640 Pa. 699, 164 A.3d 1189 (2017) (plurality), *cert. denied*, ___ U.S. ___, 138 S.Ct. 925, 200 L.Ed.2d 213 (2018) and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa.Super. 2017) ("**Butler I**"), *rev'd*, ___ Pa. ___, 226 A.3d 972 (2020) ("**Butler II**"), the Pennsylvania General Assembly enacted legislation to amend SORNA I. **See** Act of Feb. 21, 2018, P.L. 27, No. 10 ("Act 10"). Act 10 amended several provisions of SORNA I, and also added several new sections found at 42 Pa.C.S.A. §§ 9799.42, 9799.51-9799.75. In addition, the Governor of Pennsylvania signed new legislation striking the Act 10 amendments and reenacting several SORNA I provisions, effective June 12, 2018. **See** Act of June 12, 2018, P.L. 1952, No. 29 ("Act 29"). Through Act 10, as amended in Act 29 (collectively, SORNA II), the General Assembly split SORNA I's former Subchapter H into a Revised Subchapter H and Subchapter I. Subchapter I addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.51-9799.75. Subchapter I contains less stringent reporting requirements than Revised Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.10-9799.42.

the Sexual Offender Assessment Board ("SOAB") to determine if he satisfied the criteria for designation as a sexually violent predator ("SVP").

On April 5, 2019, Appellant filed a motion for stay of his SVP determination pending the Supreme Court's review of **Butler I**. Appellant also filed a motion to declare his lifetime registration requirements under SORNA II unconstitutional and to strike those requirements from his sentence, relying on decisions from the Chester County and Montgomery County Court of Common Pleas, which were pending before the Pennsylvania Supreme Court at that time. **See Commonwealth v. Torsilieri**, 37 MAP 2018, and **Commonwealth v. Lacombe**, 35 MAP 2018.

On April 9, 2019, the court denied Appellant's motions. Appellant proceeded to sentencing on April 26, 2019. Following an evaluation from the SOAB, the court designated Appellant a SVP under Revised Subchapter H. **See** 42 Pa.C.S.A. § 9799.24. Additionally, the court sentenced Appellant to an aggregate 15 to 30 years' imprisonment, plus 51 years of probation.

Appellant timely filed post-sentence motions on May 6, 2019. Among other things, Appellant again requested a stay of his registration requirements and SVP designation in light of **Butler I**, **Torsilieri**, and **Lacombe**, which remained pending before the Supreme Court. The Commonwealth filed a response on May 20, 2019, and the court denied Appellant's post-sentence motions on May 23, 2019.

Appellant timely filed notices of appeal at each underlying trial court

docket on June 4, 2019.[3]  On June 10, 2019, the court ordered Appellant to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on June 28, 2019.  On July 24, 2019, this Court consolidated the appeals *sua sponte*.[4]

Appellant raises two issues for our review:

> Did the court err when it proceeded with the current [SVP] assessment in light of [SVP designations] being declared unconstitutional by [**Butler I**]?
>
> Did the court err when it required [Appellant] to register as a sex offender under [Revised] Subchapter H of chapter 97 of the Judicial Code, because sexual offender registration is unconstitutional?

(Appellant's Brief at 3).

In his first issue, Appellant asserts that in **Butler I**, this Court held that a designation of SVP status under SORNA I violates the federal and state constitutions, because SVP status increases the criminal penalty to which a defendant is exposed without the factfinder making necessary factual findings

---

[3] Appellant included both underlying trial court docket numbers on each notice of appeal, in violation of **Commonwealth v. Creese**, 216 A.3d 1142 (Pa.Super. 2019).  Nevertheless, this Court has recently overruled **Creese** to the extent that it required the Superior Court to quash appeals when an appellant files multiple notices of appeal and each notice of appeal lists all of the underlying trial court docket numbers.  **See Commonwealth v. Johnson**, ____ A.3d ____, 2020 PA Super 164 (filed July 9, 2020) (*en banc*). Thus, Appellant's notices of appeal are properly before us.

[4] On July 27, 2020, this Court issued an order staying disposition of this case pending this Court's *en banc* disposition in **Commonwealth v. Albright**, 517 MDA 2019.  In light of this Court's recent order decertifying **Albright** for *en banc* reargument, we now lift the stay and proceed to address this appeal.

beyond a reasonable doubt. Appellant argues that the SVP assessment provision of Revised Subchapter H in SORNA II contains the same erroneous "clear and convincing" evidence language, instead of requiring the relevant fact-finding to be decided beyond a reasonable doubt. In light of **Butler I**, Appellant claims the SVP procedure in Revised Subchapter H of SORNA II could be valid only if the Supreme Court declared that Revised Subchapter H is not punitive. Appellant insists the registration requirements under Revised Subchapter H are punitive. Appellant concludes the court erred by proceeding with his SVP assessment after **Butler I**, and this Court should vacate and remand for resentencing without Appellant's SVP designation. We disagree.

Appellant purports to challenge the legality of his sentence, which is a question of law. Therefore, our standard of review is *de novo*, and our scope of review is plenary. **Commonwealth v. Hawkins**, 45 A.3d 1123, 1130 (Pa.Super. 2012).

In **Butler I**, this Court held that the provision of SORNA I requiring a court to designate a defendant a SVP by clear and convincing evidence violates the federal and state constitutions because it increases a defendant's criminal penalty without the fact-finder making necessary factual findings beyond a reasonable doubt. **See Butler I, supra**. While Appellant's appeal was pending, however, the Pennsylvania Supreme Court reversed **Butler I**. **See Butler II, supra**. Initially, the **Butler II** Court explained:

> …SVPs are different from the non-SVP SORNA registrants at

issue in *Muniz*[5] due to heightened public safety concerns based on the determination SVPs have "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. Therefore, a simple extrapolation from the analysis in *Muniz* is insufficient to determine whether the [registration, notification, and counseling] requirements [applicable to SVPs] constitute criminal punishment.

*Butler II, supra* at ___, 226 A.3d at 987.

In deciding whether the provisions of Revised Subchapter H applicable to SVPs were punitive, the Court explained:

We first consider whether the General Assembly's "intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's nonpunitive intent." If we find the General Assembly intended to enact a civil scheme, we then must determine whether the law is punitive in effect by considering the *Mendoza-Martinez*[6] factors. We recognize only the "clearest proof" may

_____

[5] In *Muniz*, our Supreme Court held that the registration provisions of SORNA I were punitive, such that application of those provisions to offenders who committed their crimes prior to SORNA I's effective date violated *ex post facto* principles. *See Muniz, supra*.

[6] *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644 (1963) (delineating seven-factor test as framework for determining whether statute is so punitive as to negate legislature's intention to identify scheme as civil or regulatory: "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry…") (internal footnotes omitted).

establish that a law is punitive in effect. Furthermore, in determining whether a statute is civil or punitive, we must examine the law's entire statutory scheme.

*Id.* at ___, 226 A.3d at 987 (quoting *Muniz, supra* at 732, 164 A.3d at 1208).

Concluding the stated purpose of Revised Subchapter H is non-punitive,[7] the Court next evaluated the *Mendoza-Martinez* factors. *Butler II, supra* at ____, 226 A.3d at 988-92.

In balancing these factors, the Court explained:

> Although we recognize the [registration, notification, and counseling] requirements impose affirmative disabilities or restraints upon SVPs, and those requirements have been historically regarded as punishment, our conclusions in this regard are not dispositive on the larger question of whether the statutory requirements constitute criminal punishment. This is especially so where the government in this case is concerned with protecting the public, through counseling and public notification rather than deterrent threats, not from those who have been convicted of certain enumerated crimes, but instead from those who have been found to be dangerously mentally ill. Under these circumstances, and also because we do not find the [registration, notification, and counseling] requirements to be excessive in light of the heightened public safety concerns attendant to SVPs, we conclude the [registration, notification, and counseling] requirements do not constitute criminal punishment.

*Id.* at ___, 226 A.3d at 992. Therefore, the Court determined that "the procedure for designating individuals as SVPs under Section 9799.24(e)(3) is

_____

[7] *See* 42 Pa.C.S.A. § 9799.11(b)(2) (stating Revised Subchapter H "shall not be construed as punitive").

not subject to the requirements of **Apprendi** and **Alleyne**[8] and remains constitutionally permissible." **Id.** at \_\_\_, 226 A.3d at 976.

Instantly, in light of the Supreme Court's decision in **Butler II**, we conclude that because SVP adjudication is not criminal punishment, the trial court did not err in designating Appellant a SVP under SORNA II. **See id. See also Commonwealth v. Groner**, \_\_\_ A.3d \_\_\_, \_\_\_, 2020 PA Super 124 (filed May 27, 2020) (holding: "In light of our Supreme Court's decision in **Butler II**, we conclude SORNA II's [registration, notification, and counseling] requirements for SVPs—essentially unchanged from those in SORNA [I]—are likewise non-punitive, such that its procedural framework for designating SVPs by clear and convincing evidence" is constitutionally sound). Thus, Appellant's first issue merits no relief.

In his second issue, Appellant argues Revised Subchapter H is unconstitutional because it (a) creates an irrebuttable presumption of dangerousness in violation of the right to reputation protected by the Pennsylvania Constitution; (b) increases punishment based on facts found by the legislature as opposed to a jury in violation of **Apprendi** and **Alleyne**; (c) creates an illegal sentence by requiring registration for a period in excess of the maximum term of incarceration; (d) is excessive under the U.S. and

---

[8] **See Apprendi v. New Jersey**, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and **Alleyne v. United States**, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

Pennsylvania Constitutions; and (e) violates separation of powers principles. For these reasons, Appellant concludes this Court must vacate his registration requirements. We disagree.

To begin:

> When an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law. *See Commonwealth v. Atwell*, 785 A.2d 123, 125 (Pa.Super. 2001) (citation omitted). Our consideration of questions of law is plenary. *See id.*, 785 A.2d at 125 (citation omitted). A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. *See Commonwealth v. Etheredge*, 794 A.2d 391, 396 (Pa.Super. 2002) (citations omitted). Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion. *See id.*, 794 A.2d at 396 (citation omitted).

*Commonwealth v. Howe*, 842 A.2d 436, 441 (Pa.Super. 2004).

Significantly, during the pendency of this appeal, our Supreme Court issued its decisions in *Torsilieri* and *Lacombe*. *See Commonwealth v. Torsilieri*, ___ Pa. ___, ___ A.3d ___, 2020 WL 3241625 (filed June 16, 2020). *See also Commonwealth v. Lacombe*, ___ Pa. ___, ___ A.3d ___, 2020 WL 4150283 (filed July 21, 2020).[9]

_____

[9] In *Lacombe*, our Supreme Court held that Subchapter I of SORNA II is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws. As *Lacombe* applies only to Subchapter I, and Appellant's registration requirements arise under Revised Subchapter H, *Lacombe* is not applicable to Appellant's claims and we need not discuss it further. To the extent Appellant suggests that *Lacombe* dealt with Revised Subchapter H, he is mistaken. *See Lacombe, supra*.

- 9 -

In ***Torsilieri***, our Supreme Court addressed the constitutionality of the provisions of Revised Subchapter H that are **not** applicable to SVPs. ***See Torsilieri, supra*** at *1 n.2 (reiterating holding in ***Butler II*** that registration, notification, and counseling requirements applicable to SVPs do not constitute criminal punishment and therefore SVP designation procedure is constitutionally permissible; as ***Butler II*** involves registration provisions related to SVPs, it is not relevant to defendant, who was not designated SVP). Specifically, at the post-sentence motion stage of litigation, the defendant had challenged his reporting requirements under Revised Subchapter H as violating his due process rights under the Pennsylvania Constitution. The defendant expressly challenged the presumption in SORNA II that all sex offenders are dangerous and pose a high risk of recidivism, necessitating registration and notification procedures to protect the public from recidivist sex offenders. The defendant further claimed the presumption was not supported by current research and threatens public safety by preventing the re-integration of offenders as law-abiding citizens. Although the Commonwealth argued that a post-sentence motion hearing was not the proper forum to adjudicate a challenge to the constitutionality of a statute, the trial court permitted the defendant to introduce affidavits and supporting documents of three experts concluding that sex offenders generally have low recidivism rates and questioning the effectiveness of sex offender registration systems. The Commonwealth did not offer any rebuttal expert testimony or

documents regarding the defendant's expert witnesses. *Id.* at \*2-\*3.

The trial court declared the provisions of Revised Subchapter H applicable to the defendant unconstitutional based largely on the scientific evidence the defendant had advanced at the hearing. The trial court concluded that the registration and notification provisions of Revised Subchapter H violated the defendant's right to due process by impairing his right to reputation through utilization of an irrebuttable presumption and because the statutory system failed to provide requisite notice and opportunity to be heard. The trial court further held Revised Subchapter H violated the separation of powers doctrine because it removed the trial court's ability to fashion an individualized sentence. Finally, the trial court held that Revised Subchapter H violated *Alleyne*/*Apprendi* by allowing for enhanced punishment neither determined by the fact-finder nor premised upon proof beyond a reasonable doubt. *Id.* at \*3. Consequently, the trial court vacated the defendant's sentence to the extent that it required compliance with Revised Subchapter H's registration provisions. *Id.*

On appeal, our Supreme Court initially rejected the Commonwealth's argument that the trial court lacked authority to consider the constitutionality of Revised Subchapter H. *Id.* at \*11 (stating: "[A] viable challenge to legislative findings and related policy determinations can be established by demonstrating a consensus of scientific evidence where the underlying legislative policy infringes constitutional rights. In such cases, it is the

responsibility of the court system to protect the rights of the public"). Next, the Supreme Court acknowledged that, **based on the evidence the defendant had presented in the trial court**, he posed "colorable constitutional challenges" to Revised Subchapter H's registration and notification provisions based upon his asserted refutation of two critical legislative determinations: (1) that all sex offenders pose a high risk of recidivism; and (2) that the tier-based registration system of Revised Subchapter H protects the public from the alleged danger of recidivist sex offenses. *Id.*

Notwithstanding the defendant's proffered evidence, however, the Court decided it was unable to conclude based upon the record before it whether the defendant had sufficiently undermined the validity of the legislative findings supporting Revised Subchapter H's registration and notification provisions, especially in light of the Commonwealth's contradictory scientific evidence produced on appeal. Noting that "it is not the role of an appellate court to determine the validity of the referenced studies based on mere citations rather than allowing the opportunity for the truths to develop through a hearing on the merits of the evidence," the Court remanded to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting sex offenders' constitutional rights. *Id.* at *12.

Further, in examining the trial court's analysis of the irrebuttable

presumption doctrine and the **Mendoza-Martinez** factors, the Court emphasized that the trial court had relied heavily upon its review of the defendant's proffered scientific evidence. **Id.** at *14-*20. The Court reiterated that although the defendant presented a colorable argument that the General Assembly's factual presumptions have been undermined by recent scientific studies, the Court was unable to affirm the court's conclusions "because the evidence of record does not demonstrate a consensus of scientific evidence…to find a presumption not universally true…, nor the 'clearest proof' needed to overturn the General Assembly's statements that the provisions are not punitive, which we have noted requires more than merely showing disagreement among relevant authorities." **Id.** at *21. Accordingly, the Court remanded so the trial court could re-evaluate the defendant's proffered evidence weighed against contrary evidence, if any exists. **Id.**

Instantly, we initially note that Appellant fails to articulate what registration requirements, if any, he is subject to in Revised Subchapter H that fall outside of those requirements specifically applicable to SVPs, which our Supreme Court has already declared are constitutional. **See Butler II, supra**. While Appellant suggests this Court should adopt the trial court's analysis in **Torsilieri**, Appellant ignores the crucial fact that **Torsilieri** involved the **non**-SVP provisions of Revised Subchapter H. Because Appellant was designated a SVP and our Supreme Court has already declared the

provisions of Revised Subchapter H applicable to SVPs are constitutional, Appellant's second issue arguably fails on this basis alone. **See Butler II**.

Additionally, unlike the defendant in **Torsilieri**, Appellant has produced no scientific evidence whatsoever to support his claims that the underlying legislative policy infringes on Appellant's rights. Rather, Appellant merely attached the Chester County and Montgomery County Court of Common Pleas' decisions in **Torsilieri** and **Lacombe** to his filings in the trial court, in the attempt to persuade the trial court in his case to reach the same conclusion. Likewise, Appellant's appellate brief is mostly a "copy and paste" of various excerpts from the trial court's disposition in **Torsilieri**, but without any attribution to the Chester County Court of Common Pleas. **Compare** Appellant's Brief at 11-23 **with Commonwealth v. Torsilieri**, No. 15-CR-0001570-2016 (Chester Cty CCP, filed August 31, 2018, at 41-45; 47-50; 52-53; 73-77; 78-80).

In fact, the only significant omissions in Appellant's brief as compared to the trial court's disposition in **Torsilieri**, are the trial court's numerous citations to the scientific evidence presented in that case, and the trial court's thorough analysis of the **Mendoza-Martinez** factors, which Appellant does not even mention. **See Commonwealth v. Cosby**, 224 A.3d 372 (Pa.Super. 2019), *appeal granted in part*, ____ A.3d ____, 2020 WL 3425277 (Pa. June 23,

2020)[10] (holding appellant failed to develop on appeal his challenge to constitutionality of SORNA II where appellant cited, but did not adequately apply, **Mendoza-Martinez** test to challenged provisions of SORNA II; while appellant identified several aspects of SORNA II that have remained virtually unchanged since SORNA I, he failed to provide any discussion, whatsoever, concerning alterations made by General Assembly in crafting SORNA II in response to **Muniz** and **Butler I**; this omission was fatal under Pa.R.A.P. 2119, as discussion of such changes is critical to any pertinent analysis of whether challenged portion of SORNA II is punitive and, thus, subject to state and federal prohibitions of *ex post facto* laws; further, appellant's failure to address changes between SORNA I and SORNA II showed he cannot overcome heavy burden of persuasion to demonstrate that challenged provisions of SORNA II clearly, palpably, and plainly violate state and federal *ex post facto* clauses).  Therefore, Appellant has failed to satisfy his burden to prove that the Revised Subchapter H provisions applicable to him "clearly, palpably, and plainly" violate the constitution.  **See id.**; **Howe, supra**.  Based upon the foregoing, Appellant's issues merit no relief.  Accordingly, we affirm.

---

[10] The Supreme Court's partial grant of allowance of appeal was on grounds unrelated to the constitutionality of SORNA II.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2020