J-S44001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS MANUEL PAGAN | : | |
| | : | |
| Appellant | : | No. 781 MDA 2020 |

Appeal from the Judgment of Sentence Entered August 29, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0001226-2019

BEFORE:  BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED DECEMBER 10, 2020**

Appellant, Carlos Manuel Pagan, appeals from the August 29, 2019 judgment of sentence of 221 days' to 23 months' imprisonment, followed by 3 years' probation, imposed after he pled guilty to one count of indecent assault of a victim less than 13 years of age, 18 Pa.C.S. § 3126(a)(1)(ii). Herein, Appellant challenges his designation as a Sexually Violent Predator (SVP) under Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA II"), 42 Pa.C.S. §§ 9799.10-9799.42.[1]  After careful review, we affirm.

_____

[1] Following **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) ("**Butler I**"), *rev'd*, 226 A.3d 972 (Pa. 2020) ("**Butler II**"), the Pennsylvania General Assembly amended the prior version of SORNA ("SORNA I") by enacting Act 10 on February 21, 2018, and Act 29 on June 12, 2018, which are collectively known as "SORNA II."  **See** Act of Feb. 21, 2018, P.L. 27, No. 10 ("Act 10"); Act of

On August 29, 2019, Appellant pled guilty to the above-stated offense. He waived his right to a pre-sentence SVP determination and was sentenced that same day to the aggregate term set forth *supra*. On April 30, 2020, the court held a hearing to determine if Appellant should be deemed an SVP. Based upon the testimony of Veronique N. Valliere, Psy.D. ("Dr. Valliere"), a member of the Pennsylvania Sexual Offenders Assessment Board ("SOAB"), the court entered an order finding that Appellant met the statutory criteria for designation as an SVP under Subchapter H of SORNA II.

On May 26, 2020, Appellant filed a timely notice of appeal. **See Commonwealth v. Schrader**, 141 A.3d 558, 561 (Pa. Super. 2016) (concluding "that where a defendant pleads guilty and waives a pre-sentence SVP determination, the judgment of sentence is not final until that determination is rendered"). Additionally, Appellant attached to his notice of appeal a Pa.R.A.P. 1925(b) concise statement of errors complained of on

_____

June 12, 2018, P.L. 140, No. 29 ("Act 29"). SORNA II now divides sex offenders into two subchapters: (1) Subchapter H, which applies to an offender who committed a sexually violent offense on or after December 20, 2012 (the date SORNA I became effective); and (2) Subchapter I, which applies to an individual who committed a sexually violent offense on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired, or whose registration requirements under a former sexual offender registration law have not expired.

appeal.[2]  The trial court filed a Rule 1925(a) opinion on June 16, 2020.  Herein,

Appellant states four issues for our review:

> [I.] Whether the [trial] court erred in designating Appellant as a[n SVP] where the Commonwealth adduced legally insufficient (unclear and unconvincing) evidence to support a finding that Appellant's mental disorder served as the impetus for his sexual offense, or that he had a high likelihood of sexual recidivism[?]
>
> [II.] Whether the lifetime[]registration requirements of Subchapter H of [SORNA II] constitute an illegal sentence that violates the due process clause of the [United States] and [Pennsylvania] Constitutions because they are impermissibly punitive, based on an irrebuttable false presumption, and do not require a finding of guilt beyond a reasonable doubt[?]
>
> [III.] Whether Subchapter H's provisions[,] regarding automatic lifetime[]registration requirements, demonstrated earlier in Appellant's brief to be unconstitutionally punitive, are not severable from its provisions regarding requirements for SVPs: wherefore the latter must be stricken down with the former, along with the entirety of Subchapter H?
>
> [IV.] Whether the lifetime-registration requirements of Subchapter H of SORNA [II] involve unconstitutionally cruel and unusual punishment[?]

Appellant's Brief at 7-8 (footnote, quotation marks, and emphasis omitted).

Appellant first challenges the sufficiency of the evidence to sustain his

designation as an SVP.

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the

---

[2] The trial court thereafter filed an order directing Appellant to file a Rule 1925(b) statement.  Appellant did not file any amended/supplemental statement in response.  We view his premature Rule 1925(b) statement as satisfying the court's order.

Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015) (citation omitted).

This Court has explained the SVP designation process, as follows:

After a person has been convicted of an offense listed in 42 Pa.C.S. § 9799.14, the trial court then orders an assessment to be done by the SOAB to help determine if that person should be classified as an SVP. An SVP is defined as a person who has been convicted of a sexually violent offense ... and who has a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory…. Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to reoffend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element.

*Hollingshead*, 111 A.3d at 189-90 (citation and brackets omitted).

In this case, Appellant argues that the Commonwealth failed to prove that the impetus behind his offense was a mental abnormality or personality disorder. *See* Appellant's Brief at 17 (citing *Commonwealth v. Bey*, 841 A.2 562, 566 (Pa. Super. 2004) ("The salient inquiry, mandated by the

- 4 -

statute, … in determining SVP status is identification of the impetus behind commission of the offense, that is, whether it proceeds from a mental defect/personality disorder or another motivating factor.")). He further insists that the Commonwealth did not establish that his "disorder[,] *in particular*[,] makes it likely that he will commit further *sexually* violent offenses." ***Id.*** at 18 (emphasis in original). According to Appellant, the Commonwealth's sole witness, Dr. Valliere, admitted that Appellant's "mental disorder was *not* the cause of, or any kind of 'impetus for,' his underlying sexual offense[,]" which was Appellant's "first and only" such crime. ***Id.*** at 18-19 (emphasis in original). Appellant also insists that Dr. Valliere did not testify that his "disorder render[s] him highly *likely* to commit another sexual offense[,]" but, instead, she merely opined that his disorder "*facilitates* re[-]offense." ***Id.*** at 19, 20 (emphasis added). For these reasons, Appellant concludes that Dr. Valliere's testimony was insufficient to constitute clear and convincing evidence that he is an SVP.

After carefully reviewing the record, we disagree. At the SVP hearing, Dr. Valliere testified as an expert in the field of sexual offender assessment. N.T. Hearing, 4/30/20, at 4-5. While Appellant did not participate in an interview with Dr. Valliere, she considered numerous documents from this case, as well as Appellant's other criminal actions, including the affidavits of probable cause, investigation reports from the SOAB, a pre-sentence investigation report, police reports, Appellant's records from the Pennsylvania Department of Probation and Parole, and information provided by the victim

in this case. *Id.* at 6. Based on her analysis, Dr. Valliere opined that Appellant meets the statutory definition of an SVP. *Id.* at 8. More specifically, she concluded that Appellant suffers from antisocial personality disorder. *Id.* at 8-9. In support of this conclusion, she noted that Appellant has committed various offenses, demonstrating his "ability to be criminal in a variety of areas[,] which is one of the hallmarks of antisocial" personality disorder. *Id.* at 9.

Dr. Valliere recognized that "antisocial personality disorder[,] in and of itself[,] does not make one sexually violent…." *Id.* However, she explained that, "once sexual violence is added to the criminal repertoire, then antisocial personality disorder facilitates re-offense because the individual lacks the internal barriers to reoffending. So once somebody with antisocial personality disorder starts sexually assaulting other people, then it's related to risk of recidivism." *Id.* Pertaining specifically to Appellant, the doctor further explained:

> [Dr. Valliere:] In [Appellant's] case, his sexual crime of repeatedly sexually abusing an 8-year-old child for what is an unspecified time period[,] but it looks like months[,] suggested he may have sexual arousal to children;[3] but in any event, the child's age was

---

[3] The facts considered by Dr. Valliere (to which Appellant does not object) included statements by the victim's mother that she entered "her daughter's bedroom" on the night of her 8th birthday and found Appellant "kneeling by the bed" and "whispering to the victim." Sexually Violent Predator Assessment, 11/20/19, at 2. "When [Appellant] saw [the] mother standing there, he 'jumped to his feet,' acting very nervous." *Id.* The victim's mother took her into another room, at which point the victim said that Appellant "was

no barrier to his sex[ual] offending. So[,] he's capable of sexualizing and sexually assaulting a child even if he doesn't choose the victim because they [are] a child[,] like someone who's sexually aroused [by] children. So[,] that's his diagnosis.

***

[The Commonwealth:] [Appellant] has no prior criminal history of sexual offending; however, notwithstanding that, you believe that he is likely to reoffend or possibly reoffend based on his antisocial personality disorder?

[Dr. Valliere:] Yes. He does have a significant prior history of violence against females, and his sexual assault of an available child may be an indication that clearly he does not regard the rights of others very readily[,] and has violated Protection From Abuse Orders. So, like I said, he may not have targeted a child in particular, but he is willing to violate other people violently and for his own gratification. Now it has extended into the sexual realm[,] which makes his behavior more likely to occur than someone who did not have antisocial personality disorder.

*Id.* at 10.

Contrary to Appellant's argument on appeal, Dr. Valliere's testimony was sufficient to constitute clear and convincing evidence that he suffers from antisocial personality disorder and is likely to reoffend. She explained that his disorder was the impetus for his committing the offense in this case, as well as his past criminal activity. Dr. Valliere also opined that once an individual with antisocial personality disorder commits an act of sexual violence, it

touching her genitals and it was not the first time." *Id.* During a subsequent forensic interview, the victim "disclosed that [Appellant] had assaulted her by touching her genitals over her clothing on the night he was arrested. … She also stated that [Appellant] had touched her 'lots of times' during the 'same time.' She said, 'He keeps doing this to me, the same thing each time.'" *Id.* Additionally, the victim's father told police that they saw Appellant "every now and then," with the last visit being about three months before the assault in this case. *Id.*

heightens their risk of recommitting sexual offenses. When asked if Appellant was likely to reoffend based on his antisocial personality disorder, the doctor answered in the affirmative. Therefore, Appellant's challenge to the sufficiency of the evidence to support his SVP designation is meritless.[4]

Appellant's next three issues all attack the validity of the lifetime registration requirements set forth in SORNA II's Subchapter H and, thus, we will address these issues together. At the outset, we observe that Appellant does not directly challenge the validity of the **SVP** registration requirements of Subchapter H, which apply to him. Instead, he attacks the constitutionality

_____

[4] We note that Appellant's comparison of his case to **Commonwealth v. Plucinski**, 868 A.2d 20 (Pa. Super. 2005), is misplaced. There, we vacated Plucinski's SVP designation because his "offenses did not involve multiple victims, unnecessary means, threats, or unusual cruelty[,]" it was Plucinski's first sexual offense, he had no history of failed treatment, and his age suggested a decreased likelihood of reoffending. **Id.** at 25. We concluded that these factors "did not clearly and convincingly show the existence of a mental abnormality or personality disorder that makes [Plucinski] likely to engage in future predatory sexual behavior." **Id.** (citation and internal quotation marks omitted). However, our Supreme Court has effectively overruled **Plucinski** by expressly disapproving of the comparative weighing of the assessment factors set forth in 42 Pa.C.S. § 9795.4(b) in reviewing a sufficiency challenge to an SVP determination. **See Commonwealth v. Meals**, 912 A.2d 213, 220 (Pa. 2006) ("To the extent the Superior Court panel majority approached its task by comparing and 'weighing' Section 9795.4 factors not present here … against those circumstances whose presence the trial court cited as supporting its SVP finding, the panel majority plainly erred. The error in the … 'comparative' approach is not merely a function of the limitation inherent in appellate sufficiency review, which should have confined the court to an assessment of those factors which supported the SVP finding, but also a function of the panel's failure to appreciate the testimony below and the practical operation of the statute, as revealed by that testimony."); **see also Commonwealth v. Morgan**, 16 A.3d 1165, 1173 (Pa. Super. 2011) (recognizing that **Meals** effectively overruled **Plucinski**). Thus, **Plucinski** does not control.

of the ***non-SVP***, lifetime registration provisions of Subchapter H.  Specifically, he claims that those registration requirements are unconstitutional because "they are impermissibly punitive, based on an irrebuttable false presumption, … do not require a finding of guilt beyond a reasonable doubt[,]" and constitute cruel and unusual punishment.  Appellant's Brief at 14, 15. Appellant then insists that the non-SVP provisions of Subchapter H cannot be severed from the remainder of the statute, thus rendering Subchapter H unconstitutional in its entirety.  In this roundabout way, Appellant concludes that his registration requirements under the SVP provisions of Subchapter H are invalid.

Appellant's argument fails for several reasons.  First, because Appellant does not claim that he is subject to any of Subchapter H's non-SVP registration requirements, he lacks standing to challenge the constitutionality of those provisions.  ***See Commonwealth v. McCoy***, 895 A.2d 18, 31 n.8 (Pa. Super. 2006) ("An individual launching a constitutional challenge to a statute must be injured by it."); ***Commonwealth v. Dodge***, 429 A.2d 1143, 1146 (Pa. Super. 1981) (providing that a defendant "does not have standing to object to the constitutionality of a statute unless he is affected by the particular feature alleged to be in conflict with the constitution").

Second, even if Appellant did have standing to attack the non-SVP provisions of Subchapter H, he has waived those claims for our review.  In Appellant's Rule 1925(b) statement, he set forth one issue pertaining to his registration requirements: "The lifetime sex offender registration is

unconstitutional under the Eighth Amendment of the United States Constitution and Article I § 13 of the Pennsylvania Constitution. The lifetime registration requirement is also illegal, as it is punitive and/or exceeds the statutory maximum sentence for the offenses [for which Appellant] was convicted." Pa.R.A.P. 1925(b), 5/26/20, at 1 (single page). Given that Appellant is subject to an **SVP** lifetime registration requirement under Subchapter H, his failure to specify in his Rule 1925(b) statement that he is attacking the constitutionality of the **non-SVP** lifetime registration requirement of the statute waives that claim for our review. **See** Pa.R.A.P. 1925(b)(4)(vii).[5] Appellant also did not specifically state, in his Rule 1925(b) statement, his present argument that the ostensibly unconstitutional, non-SVP registration requirements are not severable from the SVP provisions of Subchapter H, thereby rendering the statute unconstitutional in its entirety. As such, that claim is also waived.[6]

_____

[5] We note that the trial court's order informed Appellant that any issue not included in his concise statement would be deemed waived. **See** Order, 6/1/20, at 1 (single page); **Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation[.] ... [T]herefore, we look first to the language of that order.") (citations omitted).

[6] We recognize that an appellant cannot waive a challenge to the legality of his sentence. **See Commonwealth v. Dickson**, 918 A.2d 95, 99 (Pa. 2007). However, Subchapter H's non-SVP registration requirements have not been imposed upon Appellant. As such, his challenge to the constitutionality of those provisions does not implicate the legality of his sentence.

Third, to the extent Appellant's constitutional attacks on Subchapter H could be viewed as implicating his SVP registration requirements, we are bound by *Butler II* to conclude that those provisions are constitutional. There, our Supreme Court held that the registration, notification, and counseling requirements imposed by SORNA I on SVP offenders "do not constitute criminal punishment." *Butler II*, 226 A.3d at 992. Consequently, the *Butler II* Court concluded that "the procedure for designating individuals as SVPs under Section 9799.24(e)(3) is not subject to the requirements of *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),[7]] and *Alleyne* [*v. U.S.*, 570 U.S. 99 (2013),[8]] and remains constitutionally permissible." *Id.* at 976. Following *Butler II*, this Court has held that the SVP registration requirements set forth in the revised Subchapter H of SORNA II are also not punitive and may be constitutionally applied. *See Commonwealth v. Manzano*, 237 A.3d 1175, 1179 (Pa. Super. 2020) ("[I]n light of the Supreme Court's decision in *Butler II*, we conclude that because SVP adjudication is not criminal punishment, the trial court did not err in designating [Manzano] a[n] SVP under SORNA II.") (citing *Commonwealth v. Groner*, 233 A.3d 807, 809 (Pa. Super. 2020) ("In light of our Supreme Court's decision in

---

[7] *Apprendi* held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

[8] *Alleyne* holds that "facts that increase mandatory minimum sentences must be submitted to the jury" and found beyond a reasonable doubt. *Id.* at 106.

***Butler II***, we conclude SORNA II's [registration, notification, and counseling] requirements for SVPs—essentially unchanged from those in SORNA [I]—are likewise non-punitive, such that its procedural framework for designating SVPs by clear and convincing evidence does not run afoul of ***Apprendi*** or ***Alleyne***.")).

Following ***Butler II*** and ***Manzano***, it is clear that Appellant's SVP registration requirements under Subchapter H of SORNA II are valid. To the extent he attempts to attack Subchapter H's non-SVP registration provisions, he lacks standing to do so, and/or has waived those specific claims for our review.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/10/2020</u>