J-S03021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLEN LEE DAVEY | : | |
| | : | |
| Appellant | : | No. 1834 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 17, 2022
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0001257-2019

BEFORE:    BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED MAY 31, 2023**

Allen Lee Davey (Appellant) appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas, following his guilty plea to involuntary deviate sexual intercourse with a child[1] (IDSI).  Appellant challenges his designation as a sexually violent predator (SVP) under Subchapter H of the Pennsylvania Sex Offender Registration and Notification Act[2] (SORNA II).  He argues: (1) the evidence was insufficient to support an SVP finding, because the Commonwealth's expert relied on "junk science;" and (2) pursuant to **Commonwealth v. Torsilieri**, 232 A.3d 567 (Pa. 2020),

---

[1] 18 Pa.C.S. § 3123(b).  The Commonwealth has not filed a brief.

[2] 42 Pa.C.S. §§ 9799.10 to 9799.42 (Subchapter H); 42 Pa.C.S. §§ 9799.10 to 9799.75 (SORNA II).

lifetime registration under SORNA II is unconstitutional because "it permanently brands a person an SVP for life, and thus[ ] denies [them] 'inherent and indefeasible rights' of acquiring and possession [sic] of property and reputation." **See** Appellant's Brief at 4, 6. We affirm.

## I. Facts & Procedural History

In March of 2019, R.C., then 15 years old, reported that her stepfather, Appellant, had been sexually assaulting her since she was six years old. Affidavit of Probable Cause, Police Criminal Complaint, 4/30/19, at 1. Appellant was charged with numerous offenses.

On September 24, 2021, Appellant entered a guilty plea to one count of IDSI. The written plea colloquy stated the factual basis for the offense as follows:[3]

> Between August 8, 2011 and August 8, 2016,[4] in the County of Monroe, Stroud Township, [Appellant] engaged in deviate sexual

---

[3] The certified record does not include the transcript for the plea hearing. Upon informal inquiry by this panel, the trial court explained there was no request for a copy of this particular transcript — a fact corroborated by the trial docket. We remind counsel that the appellant bears the burden "to ensure that the record contains what is necessary to effectuate appellate review[.]" **See Commonwealth v. Spotti**, 94 A.3d 367, 381 (Pa. Super. 2014) (*en banc*) (citation omitted).

[4] We observe the dates of Appellant's conduct fell both before and after December 20, 2012, the effective date of SORNA I. This Court has held "that when an appellant's offenses straddle the effective dates of [SORNA I], he is entitled to the lower reporting requirements of Subchapter I, absent a specific finding of when the offenses related to the convictions actually occurred." **Commonwealth v. Alston**, 212 A.3d 526, 530 (Pa. Super. 2019). **See also Commonwealth v. Elliott**, 249 A.3d 1190, 1193 (Pa. Super. 2021)
*(Footnote Continued Next Page)*

intercourse with a complainant who was less than 13 years of age, to wit: R.C.

Guilty Plea Colloquy & Plea, 9/24/21, at 1. The trial court directed that the Sexual Offender Assessment Board (SOAB) conduct an evaluation as to whether Appellant satisfied the criteria to be an SVP.

On June 17, 2022, the trial court conducted a combined SVP and sentencing hearing. First, the Commonwealth presented the testimony of SOAB member Mary Muscari, Ph.D. Relevant to Appellant's arguments on appeal, she stated she has a master's degree in criminology and a doctoral degree in psychiatric nursing, but not any degrees in psychiatry or psychology. N.T. at 9, 12. Nevertheless, Appellant did not object to her qualification as an expert. *Id.* at 15. Dr. Muscari reviewed in detail each of the 15 statutory factors for an SVP determination, as well as the detailed facts of this case. *Id.* at 22-31. *See* 42 Pa.C.S. § 9799.24(b)(1)-(4). She opined Appellant met

_____

(generally, Subchapter H applies to an offender who committed a sexually violent offense after December 20, 2012, the date SORNA I became effective, while Subchapter I applies to an individual who committed a sexually violent offense between April 22, 1996, and December 20, 2012).

As we discuss *infra*, at the SVP hearing, the trial court found Appellant was an SVP under Section 9799.23, which falls under Subchapter **H**, and the written "Notification of Megan's Law Sex Offender Registration Duties," provided to Appellant and signed by him, similarly stated he was to register under Subchapter **H**. N.T. SVP Hearing/Sentencing, 6/17/22, at 95; Notification of Megan's Law Sex Offender Registration Duties, 6/20/22, at 1. Nevertheless, Appellant has raised no challenge regarding which subchapter properly applies to him.

the criteria for having a pedophilia disorder, pursuant to the "DSM-5," which "is a diagnostic and statistical manual . . . developed by the American Psychiatric Association . . . for making psychiatric diagnoses." N.T. at 30, 32-33. Dr. Muscari further described the DSM-5 as "a compilation of opinions and research by . . . experts," and it is "considered as an evidence-based manual" and is "well accepted." *Id.* at 33. Finally, Dr. Muscari opined Appellant was likely to reoffend and met the criteria to be an SVP. *Id.* at 36, 38.

Next, Appellant presented an expert witness, Dean Dickson, a licensed psychologist and former member of the SOAB. *See* N.T. at 54-55. He opined the methodology of an SVP assessment, including the 15 statutory factors, are not scientific and "really not psychologic[al, where, for] example, there is no term in the DSM for sexual predators." N.T. at 61, 62. *See also id.* at 62 ("[W]hat we have in these reports is a lack of science."). Mr. Dickson further opined Dr. Muscari should have considered "actuarial data, appropriate research, and a description of [Appellant's] behavior outside the affidavit of probable cause." *Id.* at 73.

Nevertheless, Mr. Dickson agreed that Appellant met "the diagnostic criteria for pedophilia." N.T. at 67. However, he pointed out that Dr. Muscari did not "discuss what kind of pedophile he is," nor how various classifications of pedophiles "differ in re-offense potential." *Id.* at 66-67. With respect to sex offender recidivism generally, Mr. Dickson testified "the science [has]

changed," and now there is "a voluminous amount of research that showed . . . sex offenders recidivate at a very low rate," but the current SORNA II statutes are based on the former "false data." *Id.* at 69, 70. At this juncture, the Commonwealth objected that Mr. Dickson was addressing policy and other issues not relevant to the inquiry of whether Appellant met the criteria for an SVP. *Id.* at 70. The trial court agreed, reasoning it must consider Appellant's individual assessment only, and "not whether the statute is . . . good or . . . bad," nor whether the legislature considered the right factors. *Id.* at 71. Mr. Dickson then testified he utilized "the Static-99, which is an instrument . . . universally used to assess sex offender risk and recidivism," and determined Appellant had "a score of minus one" and was not likely to reoffend. *Id.* at 64, 66.

Finally, Mr. Dickson opined that under the methodology he applied, Appellant did not meet the criteria of an SVP. N.T. at 74. On cross-examination, however, he acknowledged that while he objected to "the format [of the statute] and the lack of looking at the science that [the field has] accumulated," the SVP criteria was prescribed by statute. *Id.* at 75. Mr. Dickson affirmed that he believed Appellant met the criteria for pedophilia, and further agreed that based on the legal, statutory definition of an SVP, Appellant met the criteria for having predatory behavior. *Id.* at 76-77.

The trial court found, based on the "uncontradicted" opinions of both parties' experts, that Appellant met the statutory criteria for an SVP. N.T. at

78. The court thus declared Appellant was subject to lifetime registration as "set forth in 42 Pa.C.S. [§] 9799.23,"[5] and additionally was a "Tier 3 offender."[6] *Id.* at 95. The court proceeded immediately to sentencing and imposed a term of 15 to 40 years' imprisonment. *Id.* at 78, 94.

Appellant filed a timely post-sentence motion, which was denied. He then took this timely appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

## II. Questions Presented

Appellant presents the following issues for our review:

[1.] Whether there was sufficient evidence presented at the "SVP" hearing to determine that [A]ppellant is a sexually violent predator.

[2.] Whether the sentencing court abused its discretion by holding that [A]ppellant is a sexually violent predator on a standard of proof less than clear and convincing evidence. . . .

[3.] Whether lifetime registration under [SORNA II] violates Pa. Const., Art. I, § 1 . . . in that it permanently brands a person an SVP for life, and thus, denies a citizen of our Commonwealth "inherent and indefeasible rights" of acquiring and possession of property and reputation.

[4.] Whether the failure of the . . . SOAB to consider scientific evidence relative to their findings that a person is a sexually violent predator is a violation of U.S. Constitution's due process clause under the Fourteenth Amendment[.]

_____

[5] As stated above, Section 9799.23 falls within Subchapter H.

[6] *See* 42 Pa.C.S. §§ 9799.14(d)(4) (IDSI is a Tier III sexual offense), 9799.15(a)(3) (Tier III sexual offender shall register for life).

Appellant's Brief at 4.

### III.  Standard of Review & Relevant Principles

We first set forth the relevant principles governing our review.

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP].  As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth.  We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015)

(citation omitted).

> This Court has stated:

> It is well-settled that an SVP order is a non-punitive collateral consequence of the criminal sentence.  "[T]he imposition of SVP status is a component of the judgment of sentence even though the ultimate collateral consequences are non-punitive."

*Commonwealth v. Woeber*, 174 A.3d 1096, 1105 (Pa. Super. 2017)

(citation & emphasis omitted).

> Furthermore, we note:

> [An SVP] is defined as a person who has been convicted of a sexually violent offense . . . and who [has] a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

> In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace

- 7 -

to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory. . . .

***Hollingshead***, 111 A.3d at 189-90 (citation omitted & paragraph break added).

> When performing an SVP assessment, a mental health professional must consider the following 15 factors: whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record; whether the defendant completed any prior sentence(s); whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending.

***Id.*** at 190, *citing* 42 Pa.C.S. § 9799.24(b)(1)-(4).[7]

## IV. Sufficiency Challenge – Science Supporting SVP Assessment

In his first issue, Appellant asserts the evidence was insufficient to support his SVP designation, because the SOAB member's assessment "was done in a non-scientific method comprising [of] 'junk science.'" Appellant's Brief at 6. Appellant contends that because Dr. Muscari did not hold any

---

[7] Appellant cites Section 9799.58 for the statutory factors for an SVP determination. Appellant's Brief at 7-8. That statute, however, falls under Subchapter **I**. The applicable statute is instead Section 9799.24(b).

degrees in psychology or psychiatry, she was unqualified to offer an opinion as to whether he manifested a disorder such as pedophilia, nor on what is predatory behavior. *Id.* at 9. Appellant asserts, "The present statute[,] enabling the SOAB to be comprised of psychologists [sic], criminologists, and psychiatrists [sic] [,] does not afford . . . due process if . . . the court . . . does not hear evidence from those absolutely qualified and licensed in such areas to do so." *Id.* at 15. Furthermore, Appellant asserts "Dr. Muscari admitted that she does not utilize a scientific method" when conducting an SVP assessment, and avers this practice "is alarming because one can be deemed an SVP on non-scientific methodology." *Id.* at 10-11.

Finally, Appellant argues for reversal of the decisions in ***Commonwealth v. Conklin***, 897 A.2d 1168 (Pa. 2006) ("[W]e hold that, in order to carry its burden of proving that an offender is an SVP, the Commonwealth is not obliged to provide a clinical diagnosis by a licensed psychiatrist or psychologist; the opinion of a qualifying criminal justice expert suffices.[ ]"), and ***Commonwealth v. Dengler***, 890 A.2d 372 (Pa. 2005) ("Because the legislature provided the framework for assessing whether an offender is an SVP, expert testimony tracking that framework, by definition, should be deemed generally accepted in the community of professionals who conduct SVP assessments. The testimony of a credentialed psychologist or psychiatrist conducting an SVP assessment which follows the statutory

formula for an assessment cannot be deemed 'novel science' and therefore no *Frye*[8] hearing is necessary."). We conclude no relief is due.

First, we note "this Court is bound by existing precedent and continues to follow controlling precedent unless it is overturned by our Supreme Court." *Alston*, 212 A.3d at 529 n.4, *citing* *Commonwealth v. Martin*, 205 A.3d 1247, 1252 (Pa. Super. 2019). Both *Dengler* and *Conklin* remain good law in Pennsylvania; thus, we are without authority to reverse or disturb those decisions. As noted above, *Conklin* held "there is nothing in the [then-in effect Megan's Law] to support [an] argument that only a licensed psychiatrist or psychologist may testify to an expert opinion concerning those aspects of SVP status involving the offender's mental abnormality or personality disorder." *Conklin*, 897 A.2d at 1176. *Dengler* stated, "Because the legislature provided the framework for assessing whether an offender is an SVP, expert testimony tracking that framework, by definition, should be deemed generally accepted in the community of professionals who conduct SVP assessments." *Dengler*, 890 A.2d at 383. Accordingly, Appellant's arguments — that Dr. Muscari lacked the proper credentials in psychology or psychiatry and the current statutory framework for SVP assessment wrongly

---

[8] *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923). *See Dengler*, 890 A.2d at 381 (Pennsylvania Supreme Court has "described the *Frye* standard as follows: 'Admissibility of the [scientific] evidence depends upon the general acceptance of its validity by those scientists active in the field to which the evidence belongs.'").

allows "junk science" — are without merit. **See Conklin**, 897 A.2d at 1178; **Dengler**, 890 A.2d at 383.

Additionally, Appellant's premise, that Dr. Muscari "admitted that she does not utilize a scientific method," is not supported by the record. **See** Appellant's Brief at 10. At the hearing, she clearly stated "the DSM is a diagnostic and statistical manual," is "an evidence-based manual," and "is well accepted." N.T. at 32-33. Indeed, Appellant's own expert witness, Mr. Dickson, acknowledged the DSM was science-based. **Id.** at 59 (testifying, "[Dr. Muscari] referenced specifically the DSM. That's the only science that is in the SVP assessment.").

In any event, while Appellant purports to challenge the sufficiency of the evidence, his argument is that the trial court should not have credited the Commonwealth's witness, but instead the testimony of his own expert witness. Such a claim goes to the weight of the evidence:

> [An SOAB] report or opinion that the individual has an abnormality indicating the likelihood of predatory sexually violent offenses is itself evidence. Also, while a defendant is surely entitled to challenge such evidence by contesting its credibility or reliability before the SVP court, such efforts affect the weight, not the sufficiency of the Commonwealth's case. Accordingly, they do not affect our sufficiency analysis.

**See Commonwealth v. Feucht**, 955 A.2d 377, 382 (Pa. Super. 2008) (citations omitted).

Furthermore, Appellant wholly overlooks the trial court's discussion that while Mr. Dickson would urge for legislative changes to SORNA II, the issue of

policy was not before the court. Instead, the narrow question was whether Appellant met the criteria, as set forth in the current statutory framework, for an SVP. N.T. at 71, 78. Finally, Appellant ignores that **both** parties' experts agreed he had a pedophilia disorder and met the criteria for an SVP under SORNA II. **See id.** at 30, 38, 74; Trial Ct. Op., 9/7/22, at 3. We conclude no relief is due on this challenge to the SVP designation.

### V. Sufficiency Challenge – *Torsilieri*

In his next issue, Appellant relies on the Pennsylvania Supreme Court's opinion in **Torsilieri**, 232 A.3d 567, as well as the Chester County Court of Common Pleas' subsequent decision on remand (discussed **infra**). He avers lifetime registration as an SVP and Tier III offender "[e]ssentially brand[s]" an individual to be a leper, and thus violates Article I, Section 1 of the Pennsylvania Constitution, as it permanently denies an individual the right to their reputation.[9] Appellant's Brief at 22. Appellant states he "incorporates . .

---

[9] **See** Pa. Const. Art. I, § 1 ("All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.").

We note that while Appellant briefly referred to the **Torsilieri** decision at the SVP and sentencing hearing, he did not raise any of the arguments now presented on appeal. **See** N.T. at 79-80 (Appellant's counsel stating, "I do have some digression on the SVP ruling, I reserve that for post-sentence motions. But many of the arguments that I will advance in regards to that, just to preserve the record . . . it's cited in [**Torsilieri**].").

*(Footnote Continued Next Page)*

- 12 -

. all of the arguments advanced by the" Chester County court, which held on remand that "SORNA is punitive in nature, offends results in a criminal sentence in excess of the statutory maximums[,] violates Federal and State proscriptions against cruel and unusual punishment[, and therefore breaches the separation of powers doctrine." *Id.* at 25. We conclude no relief is due.

Preliminarily, we observe the greater part of Appellant's argument goes to his **SVP** registration requirements, while he merely makes passing reference to his **Tier III** requirements. *See* Appellant's Brief at 22-29. We address his SVP finding first, and conclude no relief is due pursuant to *Commonwealth v. Manzano*, 237 A.3d 1175 (Pa. Super. 2020).

In *Manzano*, the defendant, determined to be an SVP, argued "Subchapter H is unconstitutional because it . . . creates an irrebuttable presumption of dangerousness in violation of the right to reputation protected by the Pennsylvania Constitution[ and] violates separation of powers principles." *Manzano*, 237 A.3d at 1179. This Court denied relief, noting the *Torsilieri*, which was issued while the *Manzano* appeal was pending: (1) "addressed the constitutionality of the provisions of Revised Subchapter H that

---

Generally, "issues not properly raised and preserved before the trial court 'are waived and cannot be raised for the first time on appeal.'" *Commonwealth v. Thorne*, 276 A.3d 1192, 1196 (Pa. 2022), *citing*, *inter alia*, Pa. R.A.P. 302(a). However, our Supreme Court has held that a challenge — to the constitutionality of lifetime registration requirements under Subchapter H— implicates the legality of a sentence and thus cannot be waived. *Thorne*, 276 A.3d at 1197.

are **not** applicable to SVPs," (2) while positively referring to the holding in

***Commonwealth v. Butler***, 226 A.3d 972 (Pa. 2020) (***Butler II***), that the

"registration, notification, and counseling requirements applicable to SVPs do

not constitute criminal punishment and therefore [the] SVP designation

procedure is constitutionally permissible."[10]  ***Manzano***, 237 A.3d at 1180.

The ***Manzano*** Court then reasoned the defendant "fail[ed] to articulate what

registration requirements, if any, he is subject to in . . . Subchapter H that fall

outside of those requirements specifically applicable to SVPs, which [***Butler***

***II***] has already declared are constitutional." ***Id.*** at 1182.  Pursuant to ***Butler***

***II*** and ***Manzano***, Appellant's present reliance on ***Torsilieri***, concerning his

SVP designation and registration requirements, are meritless.

Next, with respect to Appellant's registration requirements as a **Tier III**

offender, we conclude no relief is due.  In ***Torsilieri***, the defendant challenged

his Tier III reporting requirements

> as violating his due process rights under the Pennsylvania
> Constitution[ and] challenged the presumption in SORNA II that
> all sex offenders are dangerous and pose a high risk of recidivism,

---

[10] In its opinion, the trial court reasoned Appellant was not entitled to relief pursuant to ***Commonwealth v. Lacombe***, 234 A.3d 602 (Pa. 2020).  Trial Ct. Op. at 3.

However, as the trial court noted, ***Lacombe*** addressed Subchapter **I**. ***See*** Trial Ct. Op. at 3; ***Lacombe***, 234 A.3d at 626-67 ("We hold Subchapter I does not constitute criminal punishment, and the *ex post facto* claims forwarded by [the defendants] necessarily fail.").  That decision is thus not applicable to this appeal, where Appellant was directed to comply with Subchapter **H.**

- 14 -

> necessitating registration and notification procedures to protect the public from recidivist sex offenders. . . .

*Manzano*, 237 A.3d at 1181. On appeal, our Supreme Court acknowledged the defendant posed "colorable constitutional challenges" to Subchapter H, but "decided it was unable to conclude[,] based upon the record before it[,] whether the defendant had sufficiently undermined the validity of the legislative findings supporting . . . Subchapter H's registration and notification provisions, especially in light of the Commonwealth's contradictory scientific evidence produced on appeal." *Id.* The *Torsilieri* Court thus "remanded to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting sex offenders' constitutional rights." *Id.* at 1181.

In the case *sub judice*, Appellant has not presented any meaningful argument as to his tier-based registration. His three passing references to Tier III are, in sum: (1) "Essentially branded a '[leper]' [sic] the **Tier III** registration requirements of SORNA deny permanently a citizen of our Commonwealth 'indefeasible rights' of acquiring and possessing property and reputation;" (2) in the *Torsilieri* post-remand opinion, the trial court considered "the burdensome requirements of **[T]ier III** lifetime registration;" (3) "[Appellant] avers that . . . SORNA as applied by the courts . . . denies . . . procedural and substantive due process to litigants who have committed **Tier III** SORNA offenses." Appellant's Brief at 22, 23, 26 (emphases added). The sum of these statements, without more, are not persuasive. *See Elliott*, 249

A.3d at 1195 ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities."). Finally, this Court has held "[w]e will not venture beyond our Supreme Court's holding in *Torsilieri*," which did not reach a conclusion on the constitutionality of Subchapter H. *Commonwealth v. Wolf*, 276 A.3d 805, 814 (Pa. Super. 2022). In light of all the foregoing, we conclude no relief is due.

## VI. Conclusion

As we decline to grant relief on Appellant's sufficiency and constitutional challenges to his SVP and Tier III registration requirements under Subchapter H, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes Concurs in the Result.

Judge Sullivan Concurs in the Result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2023