J-A29043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH MICHAEL KERLE | : | |
| | : | |
| Appellant | : | No. 152 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 23, 2022
In the Court of Common Pleas of Clarion County
Criminal Division at CP-16-CR-0000086-2021

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                **FILED: JANUARY 4, 2024**

Joseph Michael Kerle (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of indecent assault, and the trial court convicted him of the summary offense of harassment.[1]  We affirm.

The trial court set forth the following facts:

> The victim, [M.S. or the victim], testified at trial about the incident that occurred on or about June 7, 2020.  [The victim] was seventeen years old at the time.  [Appellant] had been [the victim's] Mother's boyfriend for about eighteen months.  [The victim] and [Appellant] had been getting along well together.
>
> On June 7[, 2020, the victim], her sisters, her grandmother, her mother, [Appellant,] and [the victim's] maternal aunt and uncle … were spending the day at [the victim's aunt's] house in Shippenville.  The house is located about five minutes away from the house where [the victim's] mother and [Appellant] lived.

_____

[1] 18 Pa.C.S.A. §§ 3126(a)(1), 2709(a)(1).

It was about 11:00 or 11:30 at night and [Appellant] ended up getting drunk and he was falling asleep on the floor. [The victim] offered to her mother to take [Appellant] back home. [The victim] and her younger sister drove [Appellant] back to the house where [the victim's] mother and [Appellant] lived[; the victim's mother did not join them]. [The victim] did not live there; she lived with her father.

[The victim] and her sister got [Appellant] in the house, and he asked to watch a movie in the living room. For five or ten minutes, [the victim] tried to put a movie on the TV, but it was not working. [The victim's] sister decided she wanted to go to bed, and she left to sleep in another room.

[Appellant] asked [the victim] to put a movie on in his bedroom and [] she took him to his room and got him on the left side of his bed. [Appellant] asked [the victim] to stay and watch the movie with him. [The victim] got the movie on and was sitting on the right side of the bed watching the movie, waiting until [Appellant] fell asleep. Her plan was to go back to her aunt['s house] and stay the night there. [The victim] did not intend to stay the night at her mother and [Appellant's] house.

[The victim] testified, "At that point we were laying down [o]n the bed, and [Appellant] had started to kiss my neck. He started to kiss my neck, and that's when he … put his hand under my shirt. [Appellant] put [his hand] under my waistband, and then he moved it up to my chest." [The victim] stated, "At that point everything is just silent. I was just kind of frozen in shock at the whole thing, so nothing was really said while everything happened." [The victim testified,] "this kept going on for maybe two minutes. And then [Appellant] finally does say something. He sits up, and he looks at me and … he says, 'Do you want me to lick your fucking vagina?' And I said no. I shook my head." [Appellant] looked at [the victim] and said "Seriously[?]" and she nodded, and he rolled back over. [Appellant] let go of [the victim] and that is when she ran from his room.

[The victim] testified, "As I'm running out of the room, [Appellant] is calling for me. He is saying, '[M.S.,] come back. I'm sorry.' [Appellant] is yelling for me as I am running out of the room." [The victim] immediately got her sister and drove back to her aunt's house. At her aunt's house, [the victim] sat in the car for five[] or ten [] minutes … crying and letting everything out.

[The victim's] grandma came to the car, and [the victim] told her what happened. [The victim] then went in the house and called and told her dad what had happened.

[The victim] stated at trial that she did not say yes [to Appellant's advances] or encourage [Appellant].... There was no discussion before [Appellant] started kissing [the victim].... [The victim] testified [that Appellant] had not made any sexual advances toward her before. [The victim] stated she was completely frozen in fear; there was nothing she could do physically[;] her body would not let her do anything. ...

Trial Court Opinion and Order, 11/15/22, at 5-7 (some brackets and ellipses omitted).

At trial on February 14, 2022, the Commonwealth presented testimony from the victim and her father. The only defense witness was Pennsylvania State Police Trooper Chandra Baughman. Trooper Baughman testified that she interviewed the victim in October 2020, after the victim's therapist reported the incident to police. N.T., 2/14/22, at 70. Trooper Baughman confirmed, in her written police report,

[w]hen [the victim, her sister, and Appellant arrived at Appellant's] home, [the victim] helped [Appellant] to bed. ... [A] short time later[, Appellant] began to kiss [the victim's] neck and put his hand on her stomach under her shirt. He then moved his hand up her shirt and grabbed her chest. She related she left the bedroom and told her sister what happened.

*Id.* at 71. Trooper Baughman acknowledged the victim never said that Appellant tried to rape her. *Id.* at 72. Trooper Baughman also testified the victim never reported Appellant's comment about "licking [the victim's] vagina[.]" *Id.* On cross-examination, Trooper Baughman stated that the

victim's mother refused Trooper Baughman's request for an interview. *Id.* at 73. Appellant was arrested and charged based on Trooper Baughman's report.

The jury convicted Appellant of indecent assault and the trial court found him guilty of harassment. On February 16, 2022, the trial court entered an order directing the Pennsylvania Sexual Offenders Assessment Board (SOAB) to perform an assessment of whether Appellant met the criteria for classification as a sexually violent predator (SVP). The SOAB assessor opined Appellant was not an SVP.[2]

On August 23, 2022, the trial court sentenced Appellant to two months to two years less one day in jail. For the harassment conviction, the trial court imposed a concurrent sentence of 90 days in jail.

Due to the indecent assault conviction, Appellant was subject to a 15-year sex offender registration and reporting requirement, as provided in Revised Subchapter H of the Sex Offender Registration and Notification Act (SORNA).[3] N.T. (sentencing), 8/23/22, at 20; Sentencing Colloquy Form, 8/26/22. On August 26, 2022, the trial court granted bail pending appeal.

Appellant timely filed post-sentence motions (PSM) on September 2, 2022. Appellant claimed the verdicts were against the weight and sufficiency

---

[2] In a subsequent order, the trial court stated that the "District Attorney has informed this court[,] after reviewing the findings of the [SOAB] report[,] that they … will not be requesting a hearing" to determine whether Appellant is an SVP. Order, 5/19/22.

[3] 42 Pa.C.S.A. § 9799.10 *et seq*.

of the evidence, and his sentence is illegal because SORNA is unconstitutional. PSM, 9/2/22, ¶¶ 10-40, 53-65. Appellant also asked the trial court to modify his sentence to include the minimum jail term for his harassment conviction. *Id.* ¶¶ 49-51.

The trial court held a hearing on Appellant's PSM on October 26, 2022.[4] On November 15, 2022, the trial court denied Appellant's weight and sufficiency claims, but granted his motion to modify his sentence for harassment. With respect to Appellant's challenge to the constitutionality of SORNA, the trial court deferred ruling pending another evidentiary hearing. The hearing (SORNA hearing) occurred on January 20, 2023. By opinion and order entered January 30, 2023, the trial court denied Appellant's SORNA claim.

Appellant timely appealed and has complied with Pa.R.A.P. 1925. Appellant presents the following issues:

1. Whether the conviction for indecent assault is supported by sufficient evidence where the Commonwealth failed to establish *mens rea* as to non-consent?

2. Whether the conviction for harassment is supported by sufficient evidence where the Commonwealth failed to establish intent?

3. Whether the verdict is against the weight of the evidence?

---

[4] The record does not include a transcript of the hearing. ***See Commonwealth v. Lesko***, 15 A.3d 345, 410 (Pa. 2011) (explaining it is the responsibility of the appellant, not the trial court, to provide a complete record for review, including any necessary transcripts).

- 5 -

4. Whether SORNA is unconstitutional and results in an illegal sentence?

    a) Whether SORNA's irrebuttable presumption, which is not universally applicable, violates a defendant's right to due process?

    b) Whether SORNA violates a defendant's right to a trial by jury, as required by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution?

    c) Whether SORNA can potentially compel a defendant to provide evidence against himself, in violation of the Fifth Amendment to the United States Constitution and Article I Section 9 of the Pennsylvania Constitution?

    d) Whether SORNA places a defendant in jeopardy for the same alleged offenses, in violation of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution?

    e) Whether application of SORNA violates [Appellant's] fundamental right to protection of his reputation, afforded him by Sections 1 and 11 of Article I of the Pennsylvania Constitution?

    f) Whether application of SORNA results in cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution?

    g) Whether SORNA violates the Separation of Powers doctrine as it infringes upon the Pennsylvania judiciary's individualized sentencing responsibilities?

    h) Whether application of SORNA results in a sentence exceeding the statutory maximum?

Appellant's Brief at 5-7 (some capitalization modified).

Appellant first claims the Commonwealth failed to present sufficient evidence to convict him beyond a reasonable doubt of indecent assault, where the requisite *mens rea* is absent. ***See id.*** at 19-24. According to Appellant, "The Commonwealth produced no evidence that would allow a reasonable jury to conclude beyond a reasonable doubt that [Appellant] acted [intentionally, knowingly, or] recklessly with respect to the element of non-consent." ***Id.*** at 23. Appellant emphasizes the victim

> testified that when [Appellant] started touching her she "froze" and did not say anything or move. She testified, "I didn't say [Appellant] couldn't; I didn't say he could." … [T]here is no evidence of affirmative non-consent ….

***Id.*** at 21. According to Appellant, he "ceased physical contact once the alleged victim showed the first outward sign of her non-consent." ***Id.*** at 23.

> When reviewing a sufficiency claim,

> this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed. Moreover, a [factfinder] may believe all, some or none of a party's testimony.

***Commonwealth v. Burns***, 765 A.2d 1144, 1148 (Pa. Super. 2020) (citations and paragraph break omitted). "In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every

possibility of innocence." ***Commonwealth v. Castelhun***, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citation omitted).

> The Crimes Code provides a person commits indecent assault

> if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and … the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1); ***Commonwealth v. Todd***, 502 A.2d 631, 634 (Pa. Super. 1985) ("Absence of consent is an essential element of indecent assault."). Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101; ***see also Commonwealth v. Gamby***, 283 A.3d 298, 313 n.17 (Pa. 2022) ("the definition of 'indecent contact' … expresses two distinct concepts which must be proven: first, the unwanted touching of certain body parts, and, second, such touching being for the purpose of arousing or gratifying sexual desire.").

Section 3126 does not specify the *mens rea* to establish culpability for indecent assault. "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa.C.S.A. § 302(c)).

The Crimes Code defines different levels of culpability:

- 8 -

    (1)  A person acts intentionally with respect to a material element of an offense when:

        (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

        (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

    (2)  A person acts knowingly with respect to a material element of an offense when:

        (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

        (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

    (3)  A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(1-3).

"The Commonwealth is not required to prove *mens rea* by direct evidence. Frequently[,] such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence." ***Commonwealth v. Beasley***, 138 A.3d 39, 48 (Pa. Super. 2016) (citation omitted). "In a prosecution for sex offenses, a verdict may rest on the uncorroborated testimony of the victim." ***Commonwealth v. Cody***, 584 A.2d 992, 993 (Pa.

Super. 1991) (citing 18 Pa.C.S.A. § 3106); *see also Commonwealth v. Martin*, 297 A.3d 424, 435 (Pa. Super. 2023) ("A solitary witness's testimony may establish every element of a crime, assuming that it speaks to each element, directly and/or by rational inference." (citation, emphasis, and brackets omitted)).

Instantly, the trial court found Appellant possessed the requisite *mens rea* for indecent assault:

> The jury could have reasonably concluded that although [Appellant] was intoxicated, he was conscious and was able to and did communicate verbally with the victim after [Appellant] arrived home. The jury could have found that [Appellant] knew there was a risk [that the victim] would not consent to sexual contact. [Appellant] had not made any sexual advances before which [the victim had] accepted, and they had not talked about [Appellant] touching [the victim] before he did it.
>
> Prior to that night, [the victim] had not done or said anything to indicate to [Appellant] that [the victim] would consent to sexual contact. That evening, while [the victim] did agree to stay to watch a movie in [Appellant's] bedroom and she did lie down in his bed, she intended to stay only until [Appellant] fell asleep and she sat down and then lay on the side of the bed opposite of where [Appellant] was lying. While [Appellant] was touching [the victim] for several minutes, she froze and could not do anything.
>
> The jury could have reasonably concluded from this evidence [that Appellant] acted "recklessly" because [he] knew there was a risk [that the victim] would not consent and was not consenting to sexual contact[,] and that the risk was substantial and unjustifiable, that [Appellant] consciously disregarded that risk, and it was grossly unreasonable for him to do so.
>
> The jury also could have found [Appellant] act[ed] "knowingly" because he was aware or was practically certain that he was engaging in indecent contact without [the victim's]

- 10 -

consent, which could result in a criminal charge of [i]ndecent [a]ssault.

Trial Court Opinion and Order, 11/15/22, at 8.

The trial court's analysis is supported by the record and applicable law. *See id.* In addition, the trial court instructed the jury on the elements and *mens rea* of indecent assault, as well as the law with respect to consent. N.T., 2/14/23, at 123-30; *see also id.* at 134-38 (trial court responding to jury's question about consent). Contrary to Appellant's claim, the Commonwealth presented sufficient evidence to establish the elements of indecent assault beyond a reasonable doubt. *See Commonwealth v. Capo*, 727 A.2d 1126, 1127-28 (Pa. Super. 1999) (deeming evidence sufficient to sustain indecent assault conviction where defendant "manhandle[d] the victim as she struggled" to get away and touched her intimate body parts, over her clothing, for the purpose of gratifying sexual desire, and emphasizing "skin-to-skin contact is not required"); *Commonwealth v. Richter*, 676 A.2d 1232, 1236 (Pa. Super. 1996) (holding evidence that defendant fondled the complainant's breasts was sufficient to sustain his indecent assault conviction); *see also Commonwealth v. Smith*, 863 A.2d 1172, 1177 (Pa. Super. 2004) (upholding defendant's indecent assault conviction against a sufficiency challenge, and concluding defendant's fondling of the complainant's intimate body parts was done for the purpose of arousing or gratifying sexual desire); *Todd*, 502 A.2d at 635 (observing that age and mental state of alleged indecent assault victim is important and should be considered in determining

the presence or absence of consent, and stating, "Consent involves submission, but a mere submission by no means necessarily involves consent." (citation omitted)). Appellant's first issue fails.

Appellant next claims the evidence was insufficient to sustain his harassment conviction, as the "Commonwealth failed to produce any evidence [Appellant] had intent to harass, annoy or alarm the alleged victim." Appellant's Brief at 24. Appellant maintains,

> while it is true that "an intent to harass may be inferred from the totality of the circumstances," **Com**[**monwealth**] **v. Cox**, 72 A.3d 719, 721 (Pa. Super. 2013) [(citation omitted)], it is not enough that the complainant felt harassed, alarmed, or annoyed. There must be facts from which to infer a defendant's intent. **See id.** at [722,] n.5…. In this case, the Commonwealth introduced zero evidence that [Appellant] intended to harass, annoy or alarm the victim.

**Id.** at 25 (some capitalization modified).

A person commits harassment "when, with intent to harass, annoy or alarm another, the person … strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S.A. § 2709(a)(1). An intent to harass may be inferred from the totality of circumstances. **Cox**, **supra**.

Here, the trial court explained:

> [T]he Commonwealth produced sufficient evidence to establish the element of intent beyond a reasonable doubt, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. This court drew reasonable inferences that [Appellant] intended to harass, annoy or alarm the victim from the facts that [Appellant] started to kiss [the victim's] neck, and put his hand under her shirt and under her waistband, and

then he moved it up to her chest[,] and from the facts that [Appellant] sat up and looked up at [the victim] and said, "Do you want me to lick your fucking vagina?"

Trial Court Opinion and Order, 11/15/22, at 9.

Again, our review confirms the trial court's proper and sound reasoning. The trial court was free to infer that Appellant intended to harass or annoy the victim. *See Commonwealth v. Duncan*, 363 A.2d 803, 806 (Pa. Super. 1976) (*en banc*) (superseded by statute) (holding defendant's intent to annoy the complainant was properly inferred where it should have been clear to a reasonable person that defendant's repeated entreaties to perform oral sex on the complainant were offensive); *see also Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa. Super. 2006) (rejecting defendant's sufficiency challenge to harassment where defendant grabbed the minor complainant by his arm and neck, ignored complainant's pleas for release, and forcibly walked complainant home, "with the intent to harass, annoy, or alarm him."). Appellant's second issue lacks merit.

Appellant next challenges the verdicts as being against the weight of the evidence. *See* Appellant's Brief at 26-28. According to Appellant, the victim's "testimony is unreliable and contrived." *Id.* at 26.

To prevail on a weight claim, an appellant must establish that the evidence is "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Smith*, 146 A.3d 257, 265 (Pa. Super. 2016) (citation omitted); *see also Commonwealth v. Clay*, 64 A.3d

1049, 1055 (Pa. 2013) (reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion") (citation omitted). "The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims [fail].

*Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of evidence…." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (emphasis omitted).

Instantly, the trial court explained its rejection of Appellant's weight claim, stating:

> At trial, [the victim] testified that [sometime after the incident with Appellant,] she sent her mother a [text] message [that stated], "Don't try to pretend that he didn't try to rape me." [The victim] said [she sent the text] because she was angry and that is what [the assault] felt like. [The victim] stated on cross-examination that her [account of the incident has] not varied, and she has told the same story. [The victim] did not tell the police [Appellant] tried to rape her. She also did not tell them [Appellant] asked to lick her vagina or that he tried to reach down her pants. … [The victim] couldn't remember all the details and she was scared and shaken by the encounter, even months later.

On further cross-examination, [the victim] stated that when she told her mother [Appellant] tried to rape her, [the victim] believed those were [Appellant's] intentions and she believes if she had not [left Appellant's] room when she did, that is what would have happened.

These facts are not so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. This evidence is not so tenuous, vague and uncertain that the jury's verdict of guilty of Indecent Assault and the [trial] court's verdict of guilty of Harassment [] shocks the conscience of this court.

Trial Court Opinion and Order, 11/15/22, at 10-11 (citation omitted).

Upon review, we discern no abuse of discretion by the trial court. *See*

*Blackham*, 909 A.2d at 320 (holding trial court did not abuse discretion in rejecting defendant's weight challenge to harassment, where it was within the fact-finder's purview to believe all, part, or none of the evidence and assess credibility, and the verdict did not shock the conscience). This Court may not act as fact-finder, reweigh evidence, or disturb credibility findings. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) ("it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded [] evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record." (citations omitted)). Appellant's third issue does not merit relief.

In his final issue, Appellant claims the trial court erred in denying his PSM challenging the constitutionality of SORNA. *See* Appellant's Brief at 28-40. Appellant states:

> Prior to [the SORNA] hearing, [Appellant] filed a motion to admit transcripts of expert testimony given in **Commonwealth v. Torsilieri**, Chester County No. 1570 CR 2016[5] (which was on remand from the Supreme Court of Pennsylvania),[6] in lieu of [Appellant] and the Commonwealth calling expert witnesses. By order dated January 6, 2023, the trial court granted said motion. Said transcripts were admitted as [Appellant's] Exhibit 7 at the January 20, 2023 [SORNA] hearing. At said hearing, defense counsel relied on the opinion and rationale as stated in the Opinion of Judge Allison Bell Royer in **Commonwealth v. Torsilieri**, (Pa.Com.Pl.Crim.Div. Chester County, Aug. 23, 2022). Application of SORNA is unconstitutional facially, and as applied to [Appellant]….

Appellant's Brief at 28-29 (footnotes added; some record citations omitted; some capitalization and citations modified); **see also id.** at 32 (stating Appellant "incorporates by reference the Opinion of Judge … Royer in … **Torsilieri**….").

_____

[5] In **Torsilieri**, the Chester County Court of Common Pleas, "declared the provisions of Revised Subchapter H applicable to the defendant unconstitutional based largely on the scientific evidence the defendant had advanced at [an evidentiary] hearing." **Commonwealth v. Manzano**, 237 A.3d 1175, 1180 (Pa. Super. 2020).

[6] The Supreme Court in **Torsilieri** "was unable to conclude[,] based upon the record … whether the defendant had sufficiently undermined the validity of the legislative findings supporting … Subchapter H's registration and notification provisions, especially in light of the Commonwealth's contradictory scientific evidence produced on appeal." **Manzano**, 237 A.3d at 1181. Thus, the Court vacated the trial court order finding SORNA unconstitutional, and "remanded to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting sex offenders' constitutional rights." **Id.** On remand, the trial court again found Subchapter H unconstitutional. The Commonwealth appealed. The Supreme Court heard oral argument on May 23, 2023, and the decision is pending.

- 16 -

The Commonwealth asks that we defer disposition on Appellant's constitutional challenge

> in anticipation of the Supreme Court's impending decision in **Commonwealth v. Torsilieri** (97 MAP 2022). This pending case addresses the same issues the Appellant currently raises.

Commonwealth Brief at 2.[7]  According to the Commonwealth, the Supreme Court's decision in **Torsilieri** will "significantly impact this Court's disposition of this case." **Id.** at 3.  The Commonwealth emphasizes:

> Appellant here makes nearly identical arguments to those [made by the defendant at the trial court level in **Torsilieri**], to the point that the main evidence presented at the [SORNA] hearing on this [issue was] transcripts from the Chester County hearing in **Torsilieri**.

**Id.**

As Appellant's issue raises a question of law, "our standard of review is *de novo*, and our scope of review is plenary." **Manzano**, 237 A.3d at 1178. "[T]he party challenging the constitutionality of a statute has a heavy burden of persuasion." **Id.** at 1180 (citation omitted).

Upon review, we find **Manzano** is controlling.  The defendant, who the trial court determined to be an SVP, raised a nearly identical constitutional challenge.  **Id.** at 1179 (explaining defendant claimed, "Revised Subchapter H is unconstitutional because it [] creates an irrebuttable presumption of dangerousness[,] in violation of the right to reputation protected by the

---

[7] The Commonwealth does not address Appellant's first three issues.

Pennsylvania Constitution … and [] violates separation of powers principles.").

After discussing the decisions of the Chester County Court of Common Pleas and our Supreme Court in ***Torsilieri***, ***see id.*** at 1180-81, this Court in ***Manzano*** explained:

> [U]nlike the defendant in ***Torsilieri***, [a]ppellant has produced no scientific evidence whatsoever to support his claims that the underlying legislative policy infringes on [a]ppellant's rights. Rather, [a]ppellant merely attached the Chester County … Court of Common Pleas' decision[] in ***Torsilieri*** … to his filings in the trial court, in the attempt to persuade the trial court in his case to reach the same conclusion.

***Id.*** at 1182. We affirmed the trial court's rejection of the ***Torsilieri*** claim and concluded the appellant "failed to satisfy his burden to prove that the Revised Subchapter H provisions applicable to him clearly, palpably, and plainly violate the constitution." ***Id.*** (citations and quotation marks omitted); ***cf. Commonwealth v. Mickley***, 240 A.3d 957, 961, 963 (Pa. Super. 2020) (holding trial court erred in denying defendant an evidentiary hearing on his post-sentence motion implicating ***Torsilieri*** and SORNA's constitutionality, where defendant attempted to introduce scientific studies to support his SORNA challenge).

Appellant's ***Torsilieri*** claim is similarly deficient. Thus, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 1/4/2024